Well, good morning. Welcome to the Ninth Circuit. And we have three cases set for argument today. We'd just like to remind everybody to pay attention to the time on the clock and ask for rebuttal time if you need it and try and wrap up as the time's expiring so we can keep everything on time. We'll go ahead and start with the first case set for argument today, which is D'Augusta v. American Petroleum Institute. That's case number 23-15878. Mr. Aliotto. Thank you, Your Honor. May it please the Court, Joseph M. Aliotto, Sr., for the appellants and the plaintiffs below, and with me on the brief, Ms. Theresa Moore and Ms. Tatiana Wallace. All right. I would request, Judge Nelson, for a five-minute rebuttal. Sure. Okay. This is an action that was brought under Section 4 and 16 of the Clayton Antitrust Act, also, by the way, under Section 12 for the jurisdictional issue. The charge is that the defendants have violated the antitrust laws, Sections 1 and 2 of the Sherman Act. We also made a claim that it was a violation of Section 7 of the Clayton Act on the acquisitions. The thrust of the case is that the defendants have combined and conspired to reduce reduction of oil throughout the United States, and that they did so initially in the American Petroleum Institute's offices in Washington, D.C. The facts are these, and they're practically undisputed. Counsel, we're aware of the facts. We don't need to go through that. I want to start with a question. Can you have an antitrust claim if we took out any actions by the president or his staff in this case? Yes. What would that be? Well, they combined prior to going to the president. Who? The American oil companies. We charge that they conspired prior to it and that they made their announcement on March 24. They did not go to see the president until April 3, 2020. And so prior to that— They take any action prior to meeting with the president, because wouldn't they still have to take action in furtherance of the conspiracy under the Clayton Act? Yes, Your Honor, and the reason was because they tried to take action in the United States, but in March, March 6 and 7, as Your Honor knows, that's when the price war between the Russian oil companies and the Saudi Arabian oil companies, the RAMCO, they started a price war. And Mr. Putin started it because he was concerned about the shale oil companies in the United States. So in addition to what they were feeling in terms of any demand for COVID or otherwise, when they had the price war beginning in March, March 6, when Putin walked out, the production started to come. The very next day, Saudi Arabia, RAMCO also released it. And so the oil was filling. No, we're well aware of that. The question is, did the defendants take action to work with Russia and Saudi Arabia outside of executive action by the president? No, they did not. Well, doesn't that answer the question then? Because how can we—I mean, you're ultimately seeking to bring the president as a co-conspirator into an antitrust claim based on a matter of foreign relations. What's your precedent that would allow us to do that? Well, as we said, Your Honor, this is a mirror image of the Sukoni vacuum case, the price-fixing case at which government officials participated in the reduction of the oil at that time. And the Supreme Court said very simply, you know, that that means nothing and that the only way you can approve a price-fixing agreement is by congressional sanction of which they got none. Now, the president was not looked at to do anything other than as a facilitator because of his friends, namely Mr. Putin and also the head of the Saudi Arabian Oil Company. But isn't that the heart of foreign relations, that entrusted by the Constitution to the executive, not to Congress? No, Your Honor, it does not involve foreign relations. These are commercial companies solely doing—there is no congressional activity whatsoever. They are essentially state-owned and controlled, are they not, in terms of Russia and Saudi Arabia? We are not asking, Your Honor, for any interpretation of the Russian law or the Saudi Arabia law or whether or not either Saudi Arabia or Russia obeyed their law. We could care less. That wasn't the point. Your complaint lists them as co-conspirators, doesn't it? Certainly by implication— But, Judge Talman, it's Judge Gould on the video. Sorry, Judge Gould. I'm having trouble hearing you. If you could— I'm closer. —speak into your microphone. Okay. Your complaint, Mr. Aliotto, basically accuses them of being conspirators with the United States, even though they're not named. Actually, they did not. It was very different, Your Honor. And what they did is they had their price war going on, okay? They were asked by the president personally, okay, not to do it. What they then did was very important to understand. They then said, we will reduce our production on the condition that the American oil companies do the same. Now, when the American oil companies agreed to that, they're violating all antitrust law here in the United States. Well, I would agree with you, were it not for the fact that none of this would have occurred had it not been for the intervention of the president and his emissaries in essentially brokering a deal with Saudi Arabia and Russia to end their price war if their terms and conditions were met. It was the same thing that happened in Sukoni, Your Honor. It was the Secretary of Interior, Mr. Ickes, and the Supreme Court was very clear on it. It says that it doesn't matter whether they approved it or they disapproved it or they were active in it, it doesn't matter. If you're fixing prices, you need congressional sanction and none other, none other will be accepted. Now, as I said before, this is a mirror of Sukoni. The lower court didn't even mention Sukoni. The defendants mentioned it in one line. The Sukoni is the classic case by the Supreme Court, and the Supreme Court needs to be respected and abide by and the precedence that they set until the Supreme Court says otherwise or until Congress says otherwise. It is the law and it should be followed, and it was disregarded in the court below. Counsel, so Sukoni in your mind only addresses the political question doctrine or does it also address the Norr-Pennington doctrine? No, it does not. The Norr-Pennington doctrine would be whether to pass a law or to enforce a law. They didn't ask that. We put in the complaint, if you take it as true, that they went in there, they wanted no mandate. They wanted no political action, no diplomacy. All they wanted was to ask their friends not to continue the price war. But that was not enough for those guys. When they made the demand, we'll do it, we'll cut our reduction, but you have to do it too. And when the Americans agreed to that, they knew that that was illegal to do that. And they agreed and they cut their production. Counsel, Judge Gould, if I could interject. My question, how can we comment on what you just said in an opinion without intruding on the executive branch function? The powers, of course, of the executive branch are clear, Your Honor. And when the Supreme Court and Ciccone said that you must go to get congressional sanction, not executive, not executive work or otherwise. You must have congressional sanction. Otherwise, even if an official is involved, in this case it happened to be the president who originally thought that the price drops were very, very good. He changed his mind after the meeting with all of the executives. But the Supreme Court has been extremely clear. It says none other. It must be congressionally approved. Counsel, how do you gather that? Because if you look at the Allied Tube and Conduit Corporation case, the Supreme Court said that concerted efforts to restrain or monopolize trade by petitioning government officials. It doesn't say legislative officials. It doesn't say, it doesn't put any caveat that you're now saying. It says by petitioning government officials are protected from antitrust liability. I mean, would you take the same position if it was a regulation as opposed, I mean, you must accept the fact that seeking legislation or seeking a regulation from the executive branch would be covered under North Paddington, don't you? No, because North Paddington is very specific. It's for the enforcement of a law that exists or seeking to have a law. That is what North Paddington is. But you wouldn't even think that North Paddington extends to executive agency rulemaking? If they make some rule. Listen, Your Honor, if you please. No, just answer the question. I did. You say no. Okay. No, if the executive, there's nothing written in this case. Nobody, no agreements is written. These are strictly commercial companies. That's all it is. But I must direct Your Honor's attention to Ciccone. The court said, for Congress has specified the precise manner and method of securing immunity. None other would suffice. And they go on to say price fixing without congressional sanction is illegal per se. Mr. Ali, let me ask you a question, hypothetically. If the President had acted in order to reduce the price of oil so that he could replenish the National Strategic Reserves, which he has the authority to do, would your position be that if the oil companies agreed to do that, they would nonetheless be violating the antitrust laws? No, Your Honor. And that is a hypothetical because what happened, in fact, as we put in the complaint, is that originally the President said, let's buy oil at that low amount. Then he had the meeting, and then he didn't go forward with it. The United States did not buy oil at that amount but instead allowed the companies to put their oil in our reserve and so to take the oil off the market. But doesn't that have, isn't there a national defense component to having greater quantities of oil in the National Strategic Reserve? Yes, and it should have been American oil and not the private interest oil. Well, I guess my hypothetical assumes that it really doesn't matter who's paying for it as long as the oil is there. It was there not for the purpose of defense, Your Honor. It was there to take the oil off the market. Well, you say that, but if the oil is there, it is available in the event of an emergency for the government to draw on, isn't it? This is one of the problems. Everybody goes outside the complaint, Your Honor, but the fact of the matter is, is that because they allowed the private companies to put oil in there instead of buying it, later the private companies, Phillips, began to sell to India and China and other places, regardless of the position of the United States. So they took control of it rather than the United States. I believe, Your Honor, I believe, if I can, I only have two minutes left, so I don't get to five minutes, but I believe that it is very clear that the Ciccone decision covers all of these. The Secretary of the Interior, the administration of Franklin Roosevelt, the court made it very clear, if you're going to fix prices, you have to have congressional sanctions, and they've showed them how to do it. But that's the law, and it has to be respected. It is precedent, and it must be followed. Thank you. Okay, thank you, counsel. We'll give you the time for rebuttal. We'll hear from opposing counsel. Thank you. May it please the court, I'm Ginger Anders on behalf of all appellees. But to the extent that the court has questions specifically for energy transfer, which filed a separate brief, Danielle Morello is at the counsel table. The central allegation in this complaint is that the President of the United States entered into a sovereign international agreement with Russia and Saudi Arabia to reduce those three nations' oil production and raise prices at the beginning of the pandemic. The complaint tacks on a few conclusory allegations. When you say agreement, there was a formal agreement that was reached, or was it an informal agreement that was reached? I don't think there's any written agreement, but according to the complaint. That changed. But you're right. So the complaint says there was an agreement reached. Right. The complaint alleges that there was an agreement between the President, Russia, and Saudi Arabia, and we see that in a lot of the paragraphs of the complaint. For instance, paragraph 47 of the complaint says that Trump called Russia and Saudi Arabia and, quote, that the American oil companies would reduce their production of oil to meet the production limitations pledged by Russia and Saudi Arabia, all with the purpose and intent of raising the price of oil. So I think that very clearly alleges an agreement between the United States and foreign sovereigns, pursuant to which a term of that agreement was that the defendants would reduce production. Is your case buttressed by the fact that, I mean, these are state corporations. I mean, President Trump wasn't negotiating with corporations. He was negotiating sovereign to sovereign, right? That's the allegation in the complaint, yes, that he was calling heads of state in Russia and Saudi Arabia. So I think it's very clear that this is a foreign policy judgment by the President to negotiate. Would it be different if he wasn't calling heads of state but he was calling the president of the corporation? I don't know how that would work in this particular circumstance, but would it be different if he was not calling a head of state? I don't think it would be. As Your Honor suggested, I think those states run their oil production through state-owned companies. And to the extent that the allegation was that through those companies or those companies' actions were reflecting sovereign decisions to limit oil production, then I think for active state purposes, we'd have the same result. For political question purposes, we'd also have the same result. So where would the outer limits of what your position is be? That would be if the president were to call the CEO of a private corporation on behalf of a U.S. company. That might not be covered by the political doctrine? That's exactly right. So the political question doctrine looks to whether the court is being asked to second-guess a policy judgment that is textually committed by the Constitution to the president. So as a practical matter, all of these cases involve foreign policy decisions, military decisions. And I think that's exactly what we have here because, of course, the complaint is saying that the president made a foreign policy judgment to enter into an agreement with Russia and Saudi Arabia and that a term of that agreement should be that the defendants would reduce production in order to stop the French war. So let's assume that these were private corporations and the president called the CEOs of the private corporation. You might not have the political doctrine. You might also not have what would you – under that scenario, would you still have the head of state or the state action, active state doctrine? So I think if the president were calling private companies domestically, then we wouldn't have a foreign policy overlay at all. Would we still have a Norr-Pennington problem under my hypothetical? Yes, there may well be a Norr-Pennington problem because the defendants allegedly have lobbied for the president to take this action. And to the extent that the plaintiffs' alleged injuries arise from that governmental action, the Norr-Pennington would bar them. So the Plaintiffs' Council is arguing that Norr-Pennington only applies to congressional action, not to executive action. That had never been – I never understood it to be that limited. What is their basis? What's the basis for it to be read as broadly as you're reading it? I think it has been applied in the case of executive action. So Pennington itself, that case concerned executive action by the TVPA that the defendants were lobbying for. And that was regulatory action or non-regulatory action? That was regulatory action. There are other cases that have applied this in the context we cited in our brief, for instance, seeking patents, which, again, is an agency, but it's not an agency regulating. It's an agency taking an action. But it was still some sort of action. It wasn't just executive negotiation. Although I guess the point is they've still alleged some action because they've alleged an agreement. I think that's exactly right, that the president has taken an official act here. In his capacity as president of the United States, he has entered the United States into a sovereign agreement. I think all of the rationale of Noor Pennington applies with full force to that kind of action, just as it applies to legislative or regulatory action. Because, of course, what Noor says about all this is that the point is that once the government has decided, based on lobbying, that a particular course of official action is in the interest of the United States, the Sherman Act doesn't speak to that action. And to the extent that the plaintiff's injuries arise from it, the government ought to be able to act in the public interest, even if that's anticompetitive. I think that applies in full here. Can you address their reliance on the Ciccone case? I hadn't focused on that case perhaps as much as I should, so I'm going to go back and do that, but I'd like to hear what you have to say about it. Sure. I think applying the political question doctrine is entirely consistent with Ciccone here. I understand that case to say essentially that price-fixing agreements are per se illegal and that Congress can immunize that particular actions as a substantive matter. But, of course, what's going on here is. . . But counsel seemed to read some language from that that suggested that it was Congress acting in that case. So I guess the question is whether you agree that it was Congress acting in Ciccone. Yes, and so the distinction I would make is that if we were talking about substantive antitrust immunity, you've done this thing, but we're going to immunize you, Ciccone suggests that that should be done by Congress. But that is not what's going on here when the political question doctrine is being applied. So the point of the political question doctrine here is that because plaintiffs are asking the court to second-guess a presidential foreign policy decision, the Article III jurisdiction of the federal courts is limited. The courts don't have the authority to second-guess a foreign policy judgment that is textually committed. So is your distinction between domestic and foreign? In other words, if the agreement is negotiated by an executive branch official with domestic companies, it requires congressional approval of immunity, whereas here we're dealing with an agreement that involves foreign powers negotiated by the president in his role as the policymaker for foreign policy of the country. So I guess I'm making a couple of distinctions, and that's relevant to it. So the first thing I would say is that what Ciccone is saying is that if you're going to have substantive antitrust immunity, so in other words, you have done something that violates the antitrust laws, but as a substantive matter, we're going to say you're not liable for that. That's something that Congress does in the exercise of its lawmaking power. But I think what Specter Storrs— If it involves U.S. actors, right, only U.S. actors, not foreign government. Right, there's no foreign policy overlay. So once there's a foreign policy overlay and the president is making foreign policy judgments, that's where the political question doctrine comes into play. That's what this court said in Corey v. Caterpillar. It's what the Fifth Circuit said in Specter Storrs. So essentially once a Sherman Act claim is asking the courts to implicitly decide the propriety of an executive judgment about whether to enter into an international agreement, then the court's authority doesn't extend so far, and there's not jurisdiction over that claim. And your position would be that the domestic oil companies acting in furtherance of that presidential negotiated agreement are essentially immunized from antitrust liability. Maybe not immunized. They are protected by the political question doctrine because that umbrella covers their actions in furtherance of the agreement that the president has negotiated. Yes, I would say that the political question doctrine bars adjudication or relieves the court of jurisdiction because the nature of the claim is such that the court cannot adjudicate defendants liable without also implicitly saying that the president should not have entered into this international agreement. So it's a subject matter jurisdiction question versus a decision on the merits of an antitrust claim. Exactly. That's what this court said in Corey v. Caterpillar. The political question is a matter of subject matter jurisdiction. And I think in Corey, the court used exactly the same reasoning to say, you know, the plaintiff is alleging that these sales by Caterpillar are illegal, they're wrongful, but those sales were approved and financed by the United States. There's no way, the court said, to hold that Caterpillar was liable for those sales without also saying that the United States should not have approved those sales. So I think it's exactly the same logic here under Corey. So if I could just address the separate conspiracy that my friend on the other side referred to, the sort of antecedent conspiracy. This is in paragraph 16 of the complaint. So this is the allegation that in March 2020, the defendants, quote, agreed to take any surplus oil off the market and cut production. That is a conclusory assertion of an agreement that under Twombly cannot be taken as true. It is almost word for word for the sort of legal conclusion that Twombly said is something that is just disregarded because it's just a bare allegation. And there is nothing. What about the, but they've said that they could amend the complaint now because of some new information that they got from, I guess, Kushner's book. Is that right? They moved to amend the complaint based on that. That was denied for futility. But they were going to expand upon this. What you are saying is, and the district court found was a conclusory statement, right? So I don't think they were going to expand with respect to, or I know that they weren't going to expand with respect to the defendant's private conduct. So I think there's no reason to think here that there's additional allegations. That there's any additional allegations that they could make consistent with their Rule 11 obligations. We would not have to reach that question if we accepted either any of the three jurisdictional arguments, the Noor-Pennington argument, the political question doctrine, or the act of state doctrine, right? So we're not contending that those doctrines independently are this. Oh, they wouldn't apply to this. That's why you're addressing this. So we still have to address this issue no matter what. Right. And I think that the sort of most straightforward way that the court could do this is exactly the same way the Fifth Circuit did in Spectrum Stores. So there is a very similar complaint. And what the court said was, we are affirming dismissal on political question grounds, but as part of our jurisdictional analysis, we look at the allegations of the complaint to see what they say. That complaint, like this one, attempted to allege a separate all-private conspiracy among only the non-sovereign defendants. And what the court said was, we look at the allegation, it's conclusory and or trombley, so we disregard it because it's insufficient, and therefore the complaint only talks about the sovereign agreement, we can affirm the dismissal on political question grounds. So that would be a way in which this court could dismiss or could affirm the dismissal on political question grounds. But just to go back to the fact that they, I think, can't make any — can't allege anything with respect to the private defendants, they had an opportunity. They moved to amend. They submitted a proposed complaint. The only new allegations in that complaint concern Jared Kushner's negotiation of the agreement between the United States, Russia, and Saudi Arabia that we've been talking about. So it ran straight into the political question doctrine and these other doctrines. They have never suggested that they would be able to add allegations about what the private defendants did in March 2020, despite that opportunity to amend the complaint, despite seeking discovery. All the discovery they sought was of Jared Kushner. So, again, confirming that for the plaintiffs, this suit is about the executive action fundamentally. And I think the district court looked at that and said, you know, I see, based on this course of litigation, that there are no allegations that the defendants did. Would we need to address the personal jurisdiction over energy transfer if we adopted the reasoning that you're talking about just now? So, no, I don't think so. I think we acknowledge that an argument that there's no personal jurisdiction is barred by circuit precedent. We're not asking for that to be overruled. So as this comes to the court, there is a... But there is a circuit split on that issue, right? There's a circuit split on whether energy transfer, whether there would be basically national jurisdiction in the federal courts over energy transfer. Ninth Circuit has said yes, but as I understand it, the Seventh Circuit, the Second Circuit, and the D.C. Circuit have said, no, that's not true. You still have to find jurisdiction separate from just the Clayton Act. That may well be. We haven't asked here for this court to reconsider its own precedent for purposes of this case because we think it's very, very clear that this complaint should be dismissed on multiple other grounds. So those are the bases that we're pressing here. Okay. If the court has no further questions. Judge Gould, do you have any other questions? I have no questions. Okay. Thank you, counsel. We have a little bit of time for rebuttal. Thank you, Your Honor, and may it please Your Honors. No one is above the law, and no president or anybody else walks around with an umbrella of immunity so that they... It's not a question of immunity, Mr. Alioto. It's a question of whether or not we have the power, subject matter jurisdiction, over the claim. The court system, the judiciary has always made it plain that we, that the court has the power with regard to interpreting the Constitution and the laws of the United States. And the law of the United States is the antitrust laws, and that is the policy of the United States. But the Constitution itself provides the authority of the president to conduct foreign policy. And the Supreme Court has been very clear that we do not get to second-guess the executive branch when it comes to matters of promulgating foreign policy. This isn't foreign policy, Your Honor. This is a straight, crude, and naked agreement that they don't put in paper, that they don't sign, and when they said, okay, we're... But you're not suggesting that every conspiracy requires a written agreement, are you? I mean, we see conspiracies all the time that are unwritten. I am very much in the notion that there's no signed agreement necessary, because in this case, when there is none, you go on the facts, and the facts are that they agreed to cut their production as a condition of these two other people, other companies, not nations, companies stopping their price war. We don't care about Russian war, law. We don't care about Saudi Arabia. That's not really the issue. The issue here seems to be that the president called heads of state to reach an agreement. I don't understand how we could weigh in on that. I would ask only this, Your Honor. The Ciccone case cannot be reversed by this court. No, I totally agree with you. We'll go look at that definitely. Okay. So they deal with the governmental officials getting into these issues, and they reject it. They say that Congress alone, without congressional sanction, price fixing is illegal per se, the Supreme Court said. Okay. So I want to say one thing. I think that I missed one point. Your Honor said that I don't think that Norm Pennington can apply with the president. The president, if you go to the president and you seek him to lobby for you either to get a law or to enforce a law, which is his business, that is obviously protected. Okay. Thank you, counsel. Thank you to both counsel for your arguments. The case is now submitted.
judges: GOULD, TALLMAN, NELSON